Robyn B. Sokol (State Bar Number 159506)
robyn.sokol@stinson.com
STINSON LLP
1901 Avenue of the Stars
Suite 450
Los Angeles, California 90067
Telephone:    310.730.7020
Facsimile:    310.730.7019

Attorneys For Tree Lane LLC
Debtor And Debtor In Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.  2:24-bk-13201-BB |
| TREE LANE LLC, | Chapter: 11 |
| Debtor and Debtor-in-Possession. | **REDLINED PAGES SHOWING CHANGES TO CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC AND SKYLARK (UK) SERVICER, LLC** |

Date:    March 11, 2026
Time:    1:00 p.m.
Crtrm.:   1539
        The Edward Roybal Federal Building
        255 East Temple Street
        Los Angeles, California

Attached hereto are the redlined pages of the *Chapter 11 Plan of Liquidation Proposed by Debtor Tree Lane LLC and Skylark (UK) Servicer, LLC* showing the changes made after the hearing conducted on March 11, 2026.

Dated:  March 16, 2026                    STINSON LLP

                            By:    /s/ *Robyn B. Sokol*
                                ROBYN B. SOKOL

                                Attorneys For Tree Lane LLC
                                Debtor and Debtor in Possession

REDLINED PAGES SHOWING CHANGES TO CHAPTER 11 PLAN OF LIQUIDATION

Robyn B. Sokol (State Bar Number 159506)
robyn.sokol@stinson.com
STINSON LLP
1901 Avenue of the Stars
Suite 450
Los Angeles, California 90067
Telephone:    310.730.7020
Facsimile:    310.730.7019

Attorneys For Tree Lane LLC
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| In re | Case No. 2:24-bk-13201-BB |
|---|---|
| TREE LANE LLC, | Chapter: 11 |
|      Debtor and<br>     Debtor-in-Possession. | **CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC AND SKYLARK (UK) SERVICER, LLC [DATED ~~JANUARY 28~~MARCH 16, 2026]** |

*Buyer* means Skylark Servicer or the Winner Bidder.

*Cash* means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

*Cause of Action* or *Causes of Action* means any Claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, Secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, Law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and Claims under contracts or for breaches of duties imposed by Law; (b) the right to object to or otherwise contest Claims or Interests; (c) Claims pursuant to Bankruptcy Code §§ 362, 510, 542, 543, 544 through 550, or 553; (d) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in Bankruptcy Code § 558; (e) any state or foreign Law fraudulent transfer or similar Claim; (f) Avoidance Actions; and (g) the Vella Action.

*Chapter 11 Case* means the case Filed for the Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

*Claim* means any claim, as defined in Bankruptcy Code § 101(5), against the Debtor.

*Claims Objection Deadline* means the date that is 180 days following the Effective Date, as such date may be extended from time to time.

*Class* means a category of Claims or Interests under Bankruptcy Code § 1122(a).

"**Class 4 Claim**" has the meaning ascribed to such term in Article IV(B)(4)(b) of the Plan.

"**Class 5 Claim**" has the meaning ascribed to such term in Article IV(B)(5)(b) of the Plan.

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC

CORE/3535766.0002/236701133.3

"**Class 6 Claim**" has the meaning ascribed to such term in Article IV(B)(6)(b) of the Plan.

"**Class 7 Claim**" has the meaning ascribed to such term in Article IV(B)(7)(b) of the Plan.

*Closing Costs* means (i) all costs and expenses of the escrow arrangements; (ii) the cost of any examinations and inspections and audits of the Tree Lane Parcel to the extent requested by Skylark Servicer or other Buyer; (iii) the costs for any survey; (iv) the costs of any endorsements or modifications required by the Buyer to the owner's policy (excluding the cost of endorsements required to insure over or delete any title defects that the Debtor is required to remove); (v) the costs for recording of the deed of trust; (vi) the basic premium for the owner's policy; and (vii) the recording fees for the releases or the release of other matters not constituting Permitted Exceptions.

*Closing Date* means the date on which Closing occurs and shall be no later than fourteen (14) calendar days after the entry of the Confirmation Order.

*CM/ECF* means the Bankruptcy Court's Case Management and Electronic Case Filing system.

*Confirmation* means the Bankruptcy Court's entry of the Confirmation Order on the docket.

*Confirmation Date* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket, within the meaning of FRBP 5003 and FRBP 9021.

*Confirmation Hearing* means the hearing held by the Bankruptcy Court on Confirmation of the Plan, pursuant to Bankruptcy Code §§ 1128 and 1129, as such hearing may be adjourned or continued from time to time.

*Confirmation Order* means the order of the Bankruptcy Court confirming the Plan entered pursuant to Bankruptcy Code § 1129 and in the form and with the provisions as required herein.

*Consummation* means the occurrence of the Effective Date.

7

CORE/3535766.0002/236701133.3

*Disallowed* means, with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by a Final Order; (b) is scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the Debtor and the holder thereof; or (e) has been withdrawn by the holder thereof.

*Disbursing Agent* means the Liquidating Trustee who will make or facilitate distributions contemplated under the Plan.

*Disclosure Statement* means the *Disclosure Statement Describing the Chapter 11 Plan of Liquidation Proposed by Debtor Tree Lane LLC Dated (March 16, 2026)*, including all exhibits and schedules thereto, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with Bankruptcy Code §§ 1125 and 1126 and the Bankruptcy Rules.

*Disclosure Statement Order* means the order entered by the Bankruptcy Court approving the Disclosure Statement accompanying the Plan.

*Disputed Claim* means and includes:  (i) a Claim which has been scheduled as disputed, contingent or unliquidated where a Proof of Claim has not been timely filed thereafter; (ii) a Claim as to which an objection has been timely filed with the Bankruptcy Court, and which objection has not been withdrawn on or before any date fixed for filing such objections by the Plan or by order of the Bankruptcy Court and has not been overruled or denied by a Final Order; and (iii) any Claim listed as a Disputed Claim on the Claim Chart attached as **Exhibit 1** to the Disclosure Statement.

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC

CORE/3535766.0002/236701133.3

***Distribution Date*** means a date on which the Disbursing Agent makes distributions to Holders of Claims and Interests pursuant to the Plan, which shall be as soon as reasonably practicable after the Effective Date or the date(s) selected by the Liquidating Trustee for making one or more distributions to Holders of Allowed Unsecured Claims in accordance with the Liquidating Trust Agreement.

***Effective Date*** means the date upon which all of the conditions precedent in Article VII have been satisfied or waived.

***Entity*** means any entity, as defined in Bankruptcy Code § 101(15).

***Estate*** means the estate created for the Debtor in its Chapter 11 Case pursuant to Bankruptcy Code §§ 301 and 541 upon the commencement of the Chapter 11 Case.

***Estate Contribution*** means the $1,000,000 Cash portion of the Purchase Price or $1,000,000 Cash from the Sale of the Purchased Assets to a Winning Bidder.

***Excluded Assets*** means the Retained Causes of Action.

***Exculpated Parties*** or ***Exculpated Party*** means each of the following in their capacities as such, and collectively, (a) the Debtor, (b) the CRO, (c) Skylark Servicer in its capacity as a co-proponent of the Plan, (d) the Buyer, in its capacity as the Buyer of the Tree Lane Parcel, and (e) any and all agents, attorneys, advisors, accountants, financial advisors, consultants and other professionals retained by the Estate or any Exculpated Party included in part (a)-(e), but only to the extent that that such parties were closely involved with the drafting of the Plan or sale of the Property.

***Exculpation*** has the meaning set forth in Article ~~VII~~VIII of the Plan.

***Executory Contract*** means a contract to which the Debtor is a party and that is subject to assumption or rejection under Bankruptcy Code § 365.

***File*** or ***Filed*** means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

***Final Order*** means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not

10

*Unimpaired* means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of Bankruptcy Code § 1124.

*Vella* means Zachary Vella, an individual and the defendant in the Vella Action.

*Vella Action* means the pending adversary proceeding commenced by the Debtor against Vella on November 8, 2024 with the filing of the *Complaint for (1) Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a)(1), 3439.04(a)(2) and 3439.05; (2) Recovery of Avoided Transfer for Benefit of Estate Pursuant to 11 U.S.C. §§ 550(a)(1) and 551 and Cal. Civ. Code § 3439.07; (3) Cancellation of Instruments; (4) Tortious Interference With Prospective Economic Advantage; and (5) Unjust Enrichment/Quantum Meruit/Restitution* against Zachary Vella bearing Adv. Case No. 2:24-ap-01259-BB which was amended by the Vella Complaint.

*Vella Parcel* means the 1.61-acre parcel comprised of APN 4384-023-022 (1.39 acres) and APN 4384-023-021 (.22 acres) in which Vella holds legal title as of the filing of the Plan.

*Voting Deadline* means 5:00 p.m., Pacific Time, on ——————April 23, , 2026, which date may be extended by the Debtor.

*Winning Bidder* means the winning bidder at the Auction pursuant to the Bid Procedures and this Plan.

**B.    Rules of Interpretation.**

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (4) any reference to

20

CORE/3535766.0002/236701133.3

in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. The classification of Claims and Interests against the Debtor pursuant is as follows:

| Class | Claims and Interests | Status |
|---|---|---|
| 1 | Bella Vista Secured Claim | Unimpaired |
| 2 | LA County Secured Tax Claim | Unimpaired |
| 3 | Skylark Servicer Secured Claim | Impaired |
| 4 | Cruz Concrete & Stone, Inc. | Impaired |
| 5 | HD Supply Construction/White Cap LP | Impaired |
| 6 | Lydda Lud Lender Tree LLC | Impaired |
| 7 | Waterproofing Systems Corp. dba Kazemi & Assoc. Constructions | Impaired |
| ~~8~~ | ~~Other Secured Claims~~ | ~~Unimpaired~~ |
| ~~9~~8 | General Unsecured Claims | Impaired |
| ~~10~~9 | Interests | Impaired |

**B.      Treatment of Claims and Interests.**

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

(1)      **Class 1 – Bella Vista – Secured**

(a)      <u>Classification</u>: Class 1 consists of the Claim of Bella Vista against the Debtor which is Secured by the Tree Lane Parcel.

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC
~~CORE/3535766.0002/236701133.3~~

herein, such Holder may satisfy some or all of the Skylark Secured Claim through a credit against the Purchase Price up to the amount of the Skylark Secured Claim; provided that such Holder must pay an amount equal to the Stalking Horse Cash Amount in Cash.  After the closing of the Sale, any amount of the Allowed Skylark Secured Claim not credit bid or paid from the Sale Proceeds shall constitute an Allowed General Unsecured Claim against the Debtor; provided, that the Holder of the Skylark Secured Claim shall not be entitled to receive any distributions from Cash Amount, including the Estate Contribution on account of such Allowed General Unsecured Claim.  Further, in the event that the Vella Action results in the return of APN 22 to the Debtor (as opposed to a payment of Cash), Skylark and the Liquidating Trustee shall meet and confer in good faith to reach a fair and equitable agreement on the treatment of Skylark Servicer's Secured claim with respect to APN 22.

(c)    Voting: Class 3 is Impaired under the Plan. Therefore, the Holder of the Allowed Skylark Secured Claim is entitled to vote to accept or reject the Plan.

(4)    **Class 4 – Allowed Secured Claim of Cruz Concrete & Stone, Inc.**

(a)    Classification: Class 4 consists of the Allowed Secured Claim of Cruz Concrete & Stone, Inc. which is Secured by a mechanic's lien against the Tree Lane Parcel.

(b)    Treatment: The Holder of the Allowed Secured Claim of Cruz Concrete & Stone, Inc. (the "**Class 4 Claim**") shall receive, until its Allowed Secured Claim is paid in full, and in full satisfaction, compromise, settlement and release of and in exchange for, such Allowed Secured Claim, all Sale Proceeds after the payment of (i) the DIP Facility Claim, (ii) the Skylark Secured Claim, (iii) the Stalking Horse Cash Amount and (iv) all senior Allowed Secured Claims.  **The** ~~Holder of the Claims in Class 4 shall~~**Debtor does not believe that there will be any Sale Proceeds available to pay the Class 4 Claim because no competing bids have been received by the Debtor and the Buyer will be Skylark Servicer pursuant to the Stalking Horse Bid.  As a result, the Holder of the Class 4 Claim will receive no distribution on account of its Allowed Class 4 Claim.  The Holder of the Class 4 Claim shall, however,** **have a General Unsecured Claim** ~~for the balance of their Allowed Secured~~

29

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC

~~CORE/3535766.0002/236701133.3~~

Claim that is not satisfied from the Sale Proceeds as**which shall receive the treatment** set forth above**in Class 8**.

(c)   Voting: Class 4 is Impaired under the Plan.  Therefore, the Holder of the Allowed Class 4 Secured Claim is entitled to vote to accept or reject the Plan.

(5)   **Class 5 – Secured Claim of HD Supply Construction/White Cap LP**

(a)   Classification: Class 5 consists of the Secured Claim of HD Supply Construction/ White Cap LP which is Secured by the Tree Lane Parcel.

(b)   Treatment: The Holder of the Allowed Secured Claim of HD Supply Construction/White Cap LP (the "**Class 5 Claim**") shall receive, until its Allowed Secured Claim is paid in full, and in full satisfaction, compromise, settlement and release of and in exchange for, such Allowed Secured Claim, all Sale Proceeds after the payment of (i) the DIP Facility Claim, (ii) the Skylark Secured Claim, (iii) the Stalking Horse Cash Amount and (iv) all senior Allowed Secured Claims. **The** Holder of the Claims in Class 5 shall**Debtor does not believe that there will be any Sale Proceeds available to pay the Class 5 Claim because no competing bids have been received by the Debtor and the Buyer will be Skylark Servicer pursuant to the Stalking Horse Bid.  As a result, the Holder of the Class 5 Claim will receive no distribution on account of its Allowed Class 5 Claim.  The Holder of the Class 5 Claim shall, however,** have a General Unsecured Claim for the balance of their Allowed Secured Claim that is not satisfied from the Sale Proceeds as**which shall receive the treatment** set forth above**in Class 8**.

(c)   Voting: Class 5 is Impaired.  Therefore, the Holder of the Class 5 Secured Claim is entitled to vote to accept or reject the Plan.

(6)   **Class 6 – Lydda Lud**

(a)   Classification: Class 6 consists of the Secured Claim of Lydda Lud which is Secured by the Tree Lane Parcel.

(b)   Treatment: The Holder of the Allowed Secured Claim of Lydda Lud (the "**Class 6 Claim**") shall receive, until its Allowed Secured Claim is paid in full, and in full satisfaction,

30

compromise, settlement and release of and in exchange for, such Allowed Secured Claim, all Sale Proceeds after the payment of (i) the DIP Facility Claim, (ii) the Skylark Secured Claim, (iii) the Stalking Horse Cash Amount and (iv) all senior Allowed Secured Claims. **The** ~~Holder of the Claims in Class 6 shall~~**Debtor does not believe that there will be any Sale Proceeds available to pay the Class 6 Claim because no competing bids have been received by the Debtor and the Buyer will be Skylark Servicer pursuant to the Stalking Horse Bid.  As a result, the Holder of the Class 6 Claim will receive no distribution on account of its Allowed Class 6 Claim.  The Holder of the Class 6 Claim shall, however,** have a General Unsecured Claim ~~for the balance of their Allowed Secured Claim that is not satisfied from the Sale Proceeds as~~**which shall receive the treatment** set forth ~~above~~**in Class 8**.

(c)    Voting: Class 6 is Impaired.   Therefore, the Holder of the Class 6 Secured Claim is entitled to vote to accept or reject the Plan.

(7)    **Class 7 – Waterproofing Systems Corp. dba Kazemi & Assoc. Construction**

(a)    Classification: Class 7 consists of the Secured Claim of Waterproofing Systems Corp. dba Kazemi & Assoc. Construction which is Secured by the Tree Lane Parcel.

(b)    Treatment:   The Holder of the Allowed Secured Claim of Waterproofing Systems Corp. dba Kazemi & Assoc. Construction **(the "Class 7 Claim")** shall receive, until its Allowed Secured Claim is paid in full, and in full satisfaction, compromise, settlement and release of and in exchange for, such Allowed Secured Claim, all Sale Proceeds after the payment of (i) the DIP Facility Claim, (ii) the Skylark Secured Claim, (iii) the Stalking Horse Cash Amount and (iv) all senior Allowed Secured Claims.  **The** ~~Holder of the Claims in Class 7 shall~~**Debtor does not believe that there will be any Sale Proceeds available to pay the Class 7 Claim because no competing bids have been received by the Debtor and the Buyer will be Skylark Servicer pursuant to the Stalking Horse Bid.  As a result, the Holder of the Class 7 Claim will receive no distribution on account of its Allowed Class 7 Claim.  The Holder of the Class 7 Claim shall, however,** have a General Unsecured Claim

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC

~~CORE/3535766.0002/236701133.3~~

for the balance of their Allowed Secured Claim that is not satisfied from the Sale Proceeds **as**which shall receive the treatment set forth abovein Class 8.

(c)    Voting: Class 7 is Impaired.   Therefore, the Holder of the Class 7 Secured Claim is entitled to vote to accept or reject the Plan.

(8)    **Class 8 – Other SecuredGeneral Unsecured Claims**

(a)    Classification: Class 8 consists of all Other Secured Claims against the Debtor. Each Holder of an Other Secured Claim against the Debtor shall be deemed and treated as a separate sub-class of Class 8 (e.g., Class 8A, 8B, 8C etc.)

(b)    Treatment: Each Holder of an Allowed Other Secured Claim against the Debtor shall receive, at the option of the Debtor:

(i)    payment in full in Cash;

(ii)    delivery of the collateral securing any such Claim and payment of any interest required under Bankruptcy Code § 506(b);

(iii)    Reinstatement of such Claim; or

(iv)    such other treatment rendering such Claim Unimpaired.

(c)    Voting: Class 8 is Unimpaired, and the Holders of Other Secured Claims against the Debtor are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code § 1126(f). Therefore, the Holders of Other Secured Claims against the Debtor are not entitled to vote to accept or reject the Plan.

(9)    **Class 9 – General Unsecured Claims**

(a)    Classification: Class 98 consists of all General Unsecured ClaimClaims against the Debtor.

(b)    Treatment: Each Holder of an Allowed General Unsecured Claim will receive a beneficial interest in the Liquidating Trust which will allow it to receive its Pro Rata share of Distributions made to Holders of General Unsecured Claims from the Liquidating Trust; provided, that Skylark Servicer shall not be entitled to receive Distributions funded by the Estate Contribution.

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC
CORE/3535766.0002/236701133.3

(c)    Voting: Class 8 is Unimpaired. Therefore, the Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

(~~10~~9)    **Class ~~10~~9 – Membership Interests**

(a)    Classification: Class ~~10~~9 consists of Interests.

(b)    Treatment: Holders of Interests are not entitled to receive or retain any property under the Plan on account of their Interests, which will be deemed cancelled as of the Effective Date.

(c)    Voting: Holders of Interests will neither receive nor retain any property under the Plan on account of their Interests.  Therefore, the Holders of Interests are not entitled to vote and are conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g).

**C.    Special Provision Governing Unimpaired Claims.**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired. Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

**D.    Elimination of Vacant Classes.**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code § 1129(a)(8).

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC
~~CORE/3535766.0002/236701133.3~~

equitable, shall be deemed satisfied by the distributions under the Plan to Holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, and terminated as of the Effective Date. Except as otherwise specifically provided for in the Plan, distributions to the Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or any other such similar legal process by any Holder of a Claim by reason of any subordination rights or otherwise, so that each Holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. Pursuant to Section 510 of the Bankruptcy Code, except where otherwise provided herein, the Debtor reserves the right to seek to reclassify any Allowed Claim or Equity Interest, following notice and a hearing and by Final Order of the Court in accordance with any contractual, legal, or equitable subordination rights relating thereto.

I.    **Waiver.**

Nothing contained in this Plan shall be construed to waive a Debtor's or other Entity's right to object on any basis to any Claim or Lien, including after the Effective Date.

V.    **SALE OF THE TREE LANE PARCEL**

(1)    After Confirmation, the Debtor shall ~~sell~~consummate the sale of the Tree Lane Parcel to the Buyer (which is expected to be Skylark Servicer pursuant to the Stalking Horse Bid) in accordance with the terms of the Definitive Agreements, this Plan, the Confirmation Order and the Bidding Procedures (the "**Sale**"). The Sale of the Purchased Assets shall be on an "as is, where is" basis and shall be free and clear of all claims, liens (including the Boston Lien) and interests to the fullest extent permitted by the Bankruptcy Code, including the liens set forth on **Exhibit A**. The Purchased Assets shall not include any Excluded Assets. The DIP Financing Amount will be paid through the cancellation of indebtedness if the Buyer, as expected, is Skylark Servicer or its designee and in Cash in all other instances. The Stalking Horse Cash Amount shall be paid in immediately available funds on the Closing Date.

(2)    The Debtor ~~may market~~has marketed the Purchased Assets through the Marketing Date and ~~the~~no Qualified Bids were received.  As a result, absent the consent of

35

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC

~~CORE/3535766.0002/236701133.3~~

Skylark Servicer, no Auction will be conducted in accordance with the Bid Procedures Order, except as altered herein on the Auction Date. If a Qualified Bidder makes a Qualified Bid on or before the Marketing Date in the future and Skylark Servicer agrees to reopen the marketing process, the Debtor shall hold the Auction within five Business Days of the Marketing Date or at such other at such time as may be agreed to by Skylark Servicer and the Debtor. **The Debtor does not expect that any Qualified Bidder or Qualified Bid will materialize.  Further, there is no guarantee that Skylark Servicer will agree to reopen the marketing process even if a Qualified Bid was received from a Qualified Bidder.**

(3)     Skylark Servicer may credit bid at the Auction up to the full amount of the DIP Facility and the Allowed Skylark Secured Claim; provided that at least the Stalking Horse Cash Amount shall be payable in Cash. The Debtor shall determine the bidding increments appropriate at such auction.

(4)     The term "Qualified Bid" shall mean a bid that meets all of the following conditions:

i.     The bid is evidenced by a purchase agreement and Definitive Documentation substantially similar to the Purchase Agreement and Definitive Documentation to be executed by Skylark Servicer, except for the Purchase Price.

ii.     The purchase agreement shall provide for a purchase price payable in full and in Cash at Closing.

iii.     The purchase agreement and Definitive Documentation shall contain no diligence or other contingencies, and the Sale must close by no later than three (3) Business Days after the Effective Date unless otherwise agreed by the Debtor and the Skylark Servicer.

iv.     The submission of the Qualified Bid shall be accompanied by a Cash deposit equal to 10% of the purchase price.  Such deposit shall be applied to the purchase price should the Qualified Bid be the prevailing bid at the Auction and shall be refunded if the Qualified Bid is not selected as the prevailing bid.

36

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC

CORE/3535766.0002/236701133.3

(5)    The term "Qualified Bidder" shall mean a person or persons meeting all of the following conditions:

i.    Such person or persons shall make a Qualified Bid; and

ii.    Such person or persons shall establish to the reasonable satisfaction of the Debtor that it has the financial resources and ability to close the Qualified Bid and perform under the applicable Definitive Documentation. A person or persons may satisfy this paragraph by depositing cash into an escrow account in an amount equal to the Purchase Price set forth in the Qualifying Bid. The Debtor shall disclose the financial qualifications of each Qualified Bidder to Skylark Servicer. Any dispute concerning the financial qualifications of a bidder shall be resolved by the Debtor in its business judgment so long as the Bidder is a Qualified Bidder.

iii.    The terms "Qualified Bid" and "Qualified Bidder" expand upon and include the definitions of such terms as set forth in the Bid Procedures.

(6)    Upon entry of the Confirmation Order by the Bankruptcy Court, the Sale and all agreements, instruments or transfer and documents executed in connection therewith will be deemed approved and all such agreements will be deemed authorized without any requirement of further act or action and the Debtor will be authorized to execute and deliver all such agreements, and all related documentation and the Debtor shall be authorized to execute, deliver, file, record, any such agreements, instruments and documents without further notice to or order of the Bankruptcy Court, act or action under applicable Law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

## VI.    MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Plan Funding.

All Cash on hand on the Effective Date and the Estate Contribution shall be used to fund Administrative Claims, Professional Fee Claims and Priority Tax Claims (other than the LA County Property Tax Claims and the Secured Claims of Bella Vista, which shall be paid from the Stalking Horse Cash Amount). Distributions to the DIP Facility Claim, and Allowed Secured Claims in Classes

37

1 through 7, and Other Secured Claims shall be funded from Sale Proceeds, as set forth herein. Distributions to Allowed General Unsecured Claims shall be made from the Estate Contribution and the liquidation of the Excluded Assets. The Debtor does not believe that there will be any Sale Proceeds available for distributions to Holders of Claims in Classes 4 through 7. The Liquidating Trust shall be funded with the Estate Contribution received from Skylark Servicer or the Winning Bidder from the Sale of the Purchased Assets plus Cash remaining from the DIP Financing.

**B.      Dissolution of the Debtor.**

On the Effective Date, the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith. All of the Debtor's membership interests shall be deemed cancelled, with all legal, equitable, and contractual rights thereof to be extinguished, automatically and immediately as of the Effective Date.

**C.      The Liquidating Trust.**

The Liquidating Trust will be established, as of the Effective Date, for the benefit of all Beneficiaries. The Liquidating Trust Agreement shall be executed by the Debtor and by the Liquidating Trustee, which signatures shall be effective as of the Effective Date.

The Liquidating Trust shall be a grantor trust established for the primary purpose of liquidating the Liquidating Trust Assets on behalf of the Beneficiaries in accordance with U.S. Treasury Regulations section 301.7701-4(d). The Liquidating Trust will be organized for the purpose of identifying, recovering, preserving, monitoring, liquidating and disposing of the Liquidating Trust Assets in a manner designed to maximize the value, which may take into consideration the net present value, at a reasonable discount rate, of the Liquidating Trust Assets, with no objective to continue or engage in the conduct of a trade or business.  For federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee and the Beneficiaries) shall treat the transfer of Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of the Plan as a transfer to the Beneficiaries,

38

F.      **Substantial Consummation of Plan.**

Substantial consummation of the Plan under Section 1101(2) shall be deemed to occur on the Effective Date.

## VIII.   EXCULPATIONS, RELEASES AND INJUNCTIONS.

A.      **Debtor Release.**

Except as otherwise specifically provided in the Plan, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby acknowledged, each Skylark Servicer Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and its Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or noncontingent, in law, equity, contract, tort or otherwise, that the Debtor or its Estate is or would have been legally entitled to assert against such Skylark Servicer Party arising from or related to, in whole or in part, the relationship between the Skylark Servicer Parties and the Debtor, arising from any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Article VIII.A do not release any post-Effective Date obligations of any Skylark Servicer Party (a) under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (b) any rights or obligations of any party under the Definitive Documentation.

B.      **Exculpation.**

~~Effective~~(1)    Subject to the provisions of paragraph B.(2) below, effective as of the Effective Date, to the fullest extent permissible under Section 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, no Exculpated Parties shall have or incur, and each Exculpated Party is hereby exculpated from, any Cause of Action for any Claim related to any act or omission based on the formulation, preparation, dissemination,

48

CORE/3535766.0002/236701133.3

negotiation, entry into, filing, execution, and implementation of any transactions approved by the Bankruptcy Court in the Chapter 11 Case, the Disclosure Statement, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order, or created or entered into in connection with the Disclosure Statement, the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of any membership interest or securities pursuant to the Plan or the distribution of property under the Plan or any other related agreement, and the implementation of the Plan and the restructuring contemplated by the Plan (including, for the avoidance of doubt, the reliance by any Exculpated Party on the Plan or the Confirmation Order), or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor and/or the Liquidating Trustee, except for Claims related to any act or omission that is determined by Final Order to have constituted actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction, without waiving the Exculpated Parties' rights to assert as an affirmative defense its reliance upon the advice of counsel with respect to its duties and responsibilities pursuant to the Plan.

(2)    **Notwithstanding the foregoing, the Exculpation shall be limited to conduct that occurs between the Petition Date and the Effective Date and does not release (1) any post-Effective Date obligation under the Plan or any document, instrument, or agreement executed to implement the Plan, or (2) any Claims by the Debtor arising out of any ordinary course dealings between such parties (the foregoing shall be referred to as the "Exculpation"). Nothing contained herein shall limit the liability of the Debtor's Professionals pursuant to Rule 1.8.8 of the California Rules of Professional Conduct.**

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC
CORE/3535766.0002/236701133.3

**C.    Injunction.**

Effective as of the Effective Date, ~~pursuant to Bankruptcy Code § 524(a),~~ to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to of the Plan, or are subject to Exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Liquidating Trust or the Exculpated Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests, and on the Effective Date; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, members, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. ~~Each Holder of an Allowed Claim or Allowed~~

50

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC

~~CORE/3535766.0002/236701133.3~~

Interest, as applicable, by accepting, or being eligible to accept, distributions under or reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII of the Plan.; provided, however, that attempting to enforce a Claim or Interest against the Debtor that either has not been (a) discharged, or (b) disallowed (in whole or in part) or avoided by a separate order of the Court, shall not constitute an action to interfere with the implementation or Consummation of the Plan and shall not be subject to any injunction contained in the Plan.

For the avoidance of doubt and notwithstanding Bankruptcy Code § 1141(d)(3), as of the Effective Date, except as otherwise specifically provided in the Plan, all Persons or Entities who have held, hold, or may hold Claims or Interests that are treated under the Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claim or Interest from the Debtor, the Estate, and/or the Liquidating Trust, except for the receipt of the payments or distributions, if any, that are contemplated by the Plan.

## IX.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption and Rejection of Executory Contracts and Unexpired Leases.

Except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the Debtor, as applicable, in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123, other than those that: (1) are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) have been previously assumed or rejected by the Debtor, pursuant to a Final Order of the Bankruptcy Court; (3) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect to the proposed assumption and assignment of such contract) that is pending on the Effective Date; or (4) are a contract, release, or other agreement or document entered into in connection with the Plan.

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC

CORE/3535766.0002/236701133.3

appropriate to restrain interference with the Plan, or the Confirmation Order, or to restrain the execution or implementation by any Person of the Plan, or the Confirmation Order;

(26) To issue such orders in aid of consummation of the Plan, or the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy laws, with respect to any Person, to the fullest extent authorized by the Bankruptcy Code or FRBP;

(27) To enter any order approving, in connection with, or related to, the sale, collection, transfer or disposition of any of the assets and all related transactions as may be requested by the Debtor and/or the Liquidating Trustee;

(28) To resolve any dispute that may arise if Skylark and the Liquidating Trustee cannot reach an agreement on the treatment of Skylark Servicer's Secured claim if the Vella Action results in the return of APN 22 to the Debtor;

(2829) To enter any discharge, final decree and order closing the Chapter 11 Case; and,

(2930) hear any other matter not inconsistent with the Bankruptcy Code.

## XIII.    MISCELLANEOUS PROVISIONS

### A.    Skylark Settlement Agreement.

Except as expressly modified hereby with respect to the Sale procedures and DIP Financing, the Skylark Settlement Agreement (including any releases executed in connection therewith) is incorporated herein by reference and shall remain in full force and effect notwithstanding the Confirmation of the Plan and the occurrence of the Effective Date.

### B.    Immediate Binding Effect.

Notwithstanding FRBP 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Liquidating Trustee, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC

CORE/3535766.0002/236701133.3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067.**

A true and correct copy of the foregoing document entitled (*specify*): **REDLINED PAGES SHOWING CHANGES TO CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTOR TREE LANE LLC AND SKYLARK (UK) SERVICER, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.
On **March 16, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jeremy Faith    Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com
- Sandford L. Frey    sandford.frey@stinson.com, lydia.moya@stinson.com;robyn.sokol@stinson.com;dennette.mulvaney@stinson.com;jnaiya.herd@stinson.com
- Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- Sarah Rose Hasselberger    shasselberger@marshackhays.com, shasselberger@ecf.courtdrive.com;cbastida@marshackhays.com;alinares@ecf.courtdrive.com
- Garrick A Hollander    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- Roberto J Kampfner    rkampfner@whitecase.com, ladocketing@whitecase.com;dnomi@whitecase.com;mco@whitecase.com
- Alan M. Kindred    akindred@leechtishman.com, alankindred@hotmail.com;dtomko@ch-legal.com
- Paul J Laurin    paul.laurin@offitkurman.com, slmoore@btlaw.com
- Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- Douglas M Neistat    dneistat@gblawllp.com, mramos@gblawllp.com
- Mike D Neue    mneue@till-lawgroup.com, martha.araki@till-lawgroup.com,myrtle.john@till-lawgroup.com,sachie.fritz@till-lawgroup.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- David Samuel Shevitz    David.S.Shevitz@usdoj.gov
- Robyn B Sokol    robyn.sokol@stinson.com, lydia.moya@stinson.com;dennette.mulvaney@stinson.com;dbender@leechtishman.com;jnaiya.herd@stinson.com
- James E Till    james.till@till-lawgroup.com, martha.araki@till-lawgroup.com;myrtle.john@till-lawgroup.com;sachie.fritz@till-lawgroup.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- David Wood    dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **3/16/2026,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Honorable Sheri Bluebond**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **(date)**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 16, 2026 | Lydia Moya | /s/ Lydia Moya |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

CORE/3535766.0002/235405379.1